# EXHIBIT ONE



Federal Medical Center, Devens
Health Services

Form: Inmate Request for Compassionate Release Consideration

| TO: MEDICAL SOCIAL WORK | DATE: 4/13/20 |
|---|---|
| FROM (print): Pablo M. Rivera | REGISTER NO: 05914-122 |
| Signature: /s/ P.M. Rivera | UNIT: CAMP |

Instructions: In order to be considered for Compassionate Release, you must complete this form and send it to the Medical Social Worker. The information will be used to determine if your request for Compassionate Release meets the minimum guidelines for consideration, as referenced in the Program Statement 5050.50, Compassionate Release/Reduction in Sentence. The Social Worker will meet with you regarding your request if further information is needed.

1. Check the category you are requesting Compassionate Release Consideration: (only one per request)
- ☐ Request based on Medical Circumstances
    - ☐ Medical Terminal (estimated life expectancy of 18 months or less) _____
    - ☐ Medical Debilitated (completely disabled, unable to perform activities of daily living and totally confined to a bed or chair OR only capable of limited self-care and confined to a bed or chair more than 50% of waking hours)
- ☐ Request based on Non-Medical Circumstances-Elderly Inmates
    - ☐ Request based on Elderly Inmates over 65 with Medical Conditions who have served more than 50% of sentence
    - ☐ Request based on inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced
    - ☐ Request based on Elderly Inmates over 70 who have served 30 years or more of their term of imprisonment (offense that occurred on or after November 1, 1987)
- ☐ Request based on Death or Incapacitation of the Family Member Caregiver where you are the only caregiver for your minor child
- ☐ Request based on Incapacitation of a Spouse or Registered Partner where you are the only available caretaker
- ☒ Request based on extraordinary or compelling circumstances

2. Explain the extraordinary or compelling circumstances, which could not have been foreseen at the time of your sentencing you believe warrant Compassionate Release consideration. Continue on back, if necessary. I am at risk of contracting the COVID-19 virus because I am asthmatic, and I have high blood pressure

3. Explain your proposed Release Plans and continue on back, if necessary. The information should include the following detailed information:
   1. Address and phone number of where you plan to live.
      605 Main Street, East Haven, CT 06512   203-468-0866
   2. Your family supports in the community.
      MaryAnn Rivera (mom), Carmelo Rivera (dad), sister, aunts, uncles
   3. How you plan to cover your medical expenses and support yourself.
      Through employment. Skilled in electrical work including apprenticeship
   4. Where continued health treatment and services will be received.
      Yale New Haven Hospital and local providers

Sensitive Limited Official Use Only
A copy of this form will be kept in the Medical Record section 6 and Inmate's Central File, and the original will remain with the Medical Social Worker.
June 2019
R-Dev 079

| TO: (Name and Title of Staff Member) Mr. Noel-Case Manager | DATE: April 7, 2020 |
|---|---|
| FROM: Pablo Rivera | REGISTER NO.: 05914-122 |
| WORK ASSIGNMENT: Landscaping | UNIT: CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Dear Mr. Noel:

Please see the attached memorandum, requesting that I be considered to sereve the remainder of my sentence in Home Confinement.

Respectfully,

Pablo Rivera

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate

PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

# REQUEST TO BE RELEASED TO HOME CONFINEMENT

Dear Mr. Noel:

I would like to serve the remainder of my sentence in Home Confinement, as a result of the imminent spread of the COVID-19 virus, "the Corona Virus". See 18 U.S.C.§3624(c)(2) Rev. March 28, 2020.

The CDC has stated that individuals who have been diagnosed and being treated for certain underlying medical conditions are more likely to contract and succumb to the virus. As my medical records will show I suffer from two of those risk factors identified by the CDC, which are High Blood Pressure and Asthma.

Because of the living arrangements at the prison, a spread of the virus would potentially be fatal to me as I am more likely to contract the virus because it is impractical to practice social distancing. I have served approximately 30% of my statutory sentence without any incident and all of which was served at a prison camp.

## RELEASE PLANS

Upon release from prison, I will be transported by my parents to live at their home which is located at 605 Main street East haven Connecticut . I have multiple offers for employment related to electrical apprenticeship, additionally I will work with my parents re-habilitating houses. I have several ties in the community, my minor children, my ex-wife and off-course my parents. I am also able to abide by any additional restriction imposed on me, which you will require to be assured that the community is safe, although I do not impose a danger to any other person in the community.

Respectfully,

Pablo Rivera
April 7, 2020

# EXHIBIT TWO



# Office of the Attorney General
## Washington, D.C. 20530

April 3, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU OF PRISONS

FROM: THE ATTORNEY GENERAL /s/ William P. Barr

SUBJECT: <u>Increasing Use of Home Confinement at Institutions Most Affected by COVID-19</u>

The mission of BOP is to administer the lawful punishments that our justice system imposes. Executing that mission imposes on us a profound obligation to protect the health and safety of all inmates.

Last week, I directed the Bureau of Prisons to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates, while ensuring we successfully discharge our duty to protect the public. I applaud the substantial steps you have already taken on that front with respect to the vulnerable inmates who qualified for home confinement under the pre-CARES Act standards.

As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards. In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities, consistent with the guidance below.

I. <u>**IMMEDIATELY MAXIMIZE APPROPRIATE TRANSFERS TO HOME CONFINEMENT OF ALL APPROPRIATE INMATES HELD AT FCI OAKDALE, FCI DANBURY, FCI ELKTON, AND AT OTHER SIMILARLY SITUATED BOP FACILITIES WHERE COVID-19 IS MATERIALLY AFFECTING OPERATIONS**</u>

Memorandum from the Attorney General
Subject: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19
Page 2

While BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions. I am therefore directing you to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations. You should begin implementing this directive immediately at the facilities I have specifically identified and any other facilities facing similarly serious problems. And now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer.

For all inmates whom you deem suitable candidates for home confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred. It is vital that we not inadvertently contribute to the spread of COVID-19 by transferring inmates from our facilities. Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations.

I also recognize that BOP has limited resources to monitor inmates on home confinement and that the U.S. Probation Office is unable to monitor large numbers of inmates in the community. I therefore authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety.

Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible and keep me closely apprised of your progress.

## II. PROTECTING THE PUBLIC

While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public. That means we cannot simply release prison populations en masse onto the streets. Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses.

That risk is particularly acute as we combat the current pandemic. Police forces are facing the same daunting challenges in protecting the public that we face in protecting our inmates. It is impossible to engage in social distancing, hand washing, and other recommend steps in the middle of arresting a violent criminal. It is thus no surprise that many of our police officers have fallen ill with COVID-19, with some even dying in the line of duty from the disease. This pandemic has dramatically increased the already substantial risks facing the men and women who keep us safe, at the same time that it has winnowed their ranks while officers recover from getting sick, or self-quarantine to avoid possibly spreading the disease.

The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates. Thus, while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context.

I believe strongly that we should do everything we can to protect the inmates in our care, but that we must do so in a careful and individualized way that remains faithful to our duty to protect the public and the law enforcement officers who protect us all.

## EVOLVING STATISTICS

As of April 11, 2020, there were 504,780 cases in the United States and 18,763 deaths. In Massachusetts there were 20,974 confirmed cases and 599 deaths and in Middlesex county where the Federal Prison Camp is located there were 4,845 cases. As it relates to Bureau of Prisons, nationally there were 48 Bureau of prisons institutions affected with the COVID-19 virus, and 335 federal inmates and, 185 BOP have been confirmed infected with 9 deaths.

There is a growing number of federal court decisions granting sentence reductions using §3582(c)(1)(A) because of the "extraordinary and compelling" public health crisis created by COVID-19 as follows:
United States v. McCarthy, (No. 3:17-CR-0230) (D. Conn. Apr. 8 2020);
United States v. Hansen, (No. 07-CR-00520) (EDNY Apr. 8, 2020);
United States v. Trent,(No. 16-cr-00178-CRB-1) (BD Cal. Apr. 9, 2020);
United States v. Plunk, ( No. 3:94-cr-36-TMB) (D. Alaska Apr. 9, 2020);
United States v. Decator, ( No. CCB-95-0202) (D. MD April 6, 2020
United States v. Millan, (No. 91-CR-685(LAP)(SDNY April 6, 2020);
United States v. Marin, ( No. 15-cr-252) (E.D.N.Y. Mar. 30, 2020);
United States v. Powell, ( No. 94-cr-00316) (D.D.C. Mar. 28, 2020).
United States v. Kirk Brannan, Case 4:15-cr-00080,(S.D. of Texas Apr. 2020)
United States vs. Resnick, 12-cr-152-cm (S.D. NY Apr. 2020)
United States v. Jlatrice Colvin 3:19-cr-1279 (D.CT. Apr. 2 2020) (addressing exhaustion requirements and not requiring it in light of the pandemic, exceptional circumstances).